IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| | Case No. 3:21CR47 (JAM) |
| v. | |
| | July 20, 2023 |
| RICHARD SMITH | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The Government respectfully submits this Sentencing Memorandum with regard to Richard Smith ("Smith"), who is scheduled to be sentenced on July 27, 2023.

Smith, the target of a search warrant at his Southington residence and 64-years-old at the time of his arrest, possessed millions of files (images and videos) depicting child sex abuse material, including depictions of sexual violence against infants and toddlers. When his home was searched, Smith's computer was actively connected to a dark web hidden-service website dedicated to the distribution of child pornography, from which Smith downloaded child pornography.

This was not Mr. Smith's first offense involving child sex abuse, or his first offense where he possessed child pornography. Smith is a twice convicted child sex abuser. In 1990, Smith was convicted of sexually abusing a 13-year-old boy over a four-month period, including producing sexually explicit photographs of the victim. In 1999, Smith was convicted of sexually abusing an 8-year-old victim, his nephew, and possessed child pornography on his computer. Where Smith has a long-standing history of sexual abuse of minors and possessing child pornography, he has kept up with technological advances in order to feed his desire to possess child pornography,

1

graduating to use of the dark web to download an immense quantity of child pornography, using a methodology (the Tor browser) that attempts to obfuscate the identity and location of its user.

In the more than 4 million files of child sex abuse material possessed by Smith, the Government, to date, has been able to identify over 107,000 files in which a known victim of child sex abuse is depicted. That is more than 107,000 images of child sex abuse where the then-child victim is known to law enforcement, in all, hundreds of known victims. To date, the Government has received victim impact statements from 69 victims depicted in child sex abuse images possessed by Smith. Smith's Sentencing Memorandum ("Def. Sen. Mem.") makes no mention of the victims of child sex abuse depicted in the millions of images that he possessed, many of those victims now teenagers and adults forever living with the knowledge that images of their abuse remain on the internet, traded on the dark web, and possessed by individuals like Smith.

One victim, in her victim impact statement using the pseudonym "Patty," described learning that photographs of the child sex abuse that she suffered are circulated on the internet:

> There are now people all over the world looking at photographs of my raw, exposed ten-year-old body. How unthinkable that images of exploited children would be used to satisfy some sick minded individuals. Every time someone looks at one of these pictures, even if I don't feel the harm in real time, the knowledge that the photographs are out there is killing me. I can't control these perpetrators' access to my images, and these viewers propel the child pornography industry. As long as there is a need for people to view child pornography, I'm in danger. Do these individuals realize that their desires fuel the flames for other children to be harmed?

Victim Impact Statement of "Patty."

In sum, the Government believes that a sentence of 168 months' imprisonment, at the greater end of his guideline range – 135 to 168 months' imprisonment – would be appropriate, followed by a lifetime of intensive supervised release, with mental health programing to assist the

defendant in maintaining a balanced and productive life, and to deter future possession of child sex abuse material or any other action that could cause significant public harm.

## I.    **FACTUAL SUMMARY**

On October 1, 2020, a federal warrant was executed at Smith's Southington residence, a home he shared with his wife, to search for child pornography. PSR ¶ 10. Smith was home, and his internet-connected computer, with four computer screens, was in an upstairs office. *Id.* The computer was connected to the dark web using the Tor browser. *Id*. Smith was connected to a hidden-service website called Boys Town, a dark web website dedicated to child pornography. *Id*.

Smith's computer also displayed an Excel spreadsheet that he used to categorize child pornography, including tabs labeled: "V-adolescents," "V-toddlers," and "V-kindergarten." PSR ¶ 11. On another screen was a YouTube video of children playing soccer. *Id*.

Beyond downloading child pornography from the dark web hidden-service Boys Town site, Smith engaged with others on the site. PSR ¶ 16. While there is no evidence that Smith distributed child pornography, he posted comments to the site thanking other users for sharing collections of child pornography, or posted advice on how to successfully download and access files comprising child pornography. PSR ¶ 16.

In Smith's office was near enterprise-grade computer storage capabilities, with hard drives that could store approximately 26 terabytes[1] of data. PSR ¶ 15. Smith admitted that he estimated he had computer storage capacity of approximately 70 terabytes. PSR ¶ 16. Investigators from the Department of Homeland Security, Homeland Security Investigations ("HSI") seized Smith's computer and computer storage. PSR ¶ 15.

---

[1] A terabyte is 1,000 gigabytes, or one trillion bytes. For reference, storage capabilities on an Apple iPhone 14 ranges between 128 gigabytes and 512 gigabytes. *See* https://www.apple.com/shop/buy-iphone/iphone-14.

Forensic review of data seized from Smith's residence revealed approximately 4.4 million images that comprised child sex abuse material. *Id*. Of those millions of files, analysis by the National Center for Missing and Exploited Children (NCMEC) and the Federal Bureau of Investigation ("FBI") identified approximately 107,000 files that depict hundreds of victims of child sex abuse whose identities are known to law enforcement. Many children depicted in the data seized from Smith will never be known to law enforcement. At the time of filing of this memorandum, analysis of the Smith data to identify and notify victims depicted in the material is ongoing. *See* Doc. No. 84.

Included in the millions of images of child sex abuse possessed by Smith were images depicting: male children ranging in age from infancy to 15 years engaged in oral and anal penetration, and images containing bondage; female victims ranging in ages 2 to 7, engaged in oral and vaginal penetration; a naked male minor, approximately ages 5 to 7, whose legs and wrists are chained to a wooden board in a V position, and his mouth is taped; a naked female minor, approximately age 4 to 6, being anally and vaginally penetrated with an adult penis and an object; and an infant lying on his stomach while an adult male ejaculates on the infant's back. PSR ¶ 18.

Prior to October 1, 2020, Smith had been twice convicted for activity involving the sexual abuse or exploitation of a minor. In March 1992, he was convicted of Risk of Injury to a Minor, in violation of Conn. Gen. Stat. § 53-21(a)(2) and was sentenced to 5 years' custody (21 months to serve) and 5 years' probation. PSR ¶¶ 7, 42. In August 1999, Mr. Smith was convicted of Illegal Sexual Contact of a Minor and Possession of Child Pornography, in violation of Conn. Gen. Stat. § 53a-196d and he was sentenced to 10 years' custody (3 years suspended), 3 years' custody (concurrent), and 10 years' probation. PSR ¶¶ 8, 43. Despite two convictions involving the sexual

abuse of a minor by Mr. Smith, which included possession of child pornography in each offense, there is no dispute that Smith is a Criminal History Category I. PSR ¶ 136 ("As such, he is in a criminal history category I, which appears to be understated.").

## II.   GUIDELINE CALCULATION

In the plea agreement, dated November 28, 2022, the Government calculated a total offense level 33, assuming a Criminal History Category I, resulting in a range of 135-168 months' imprisonment. Doc. No. 61, at 7-8. The defendant reserved his right to dispute the Government's guideline calculation in the plea agreement. *Id*. at 8.

In the plea agreement, the defendant agreed that, pursuant to 18 U.S.C. § 2252A(b)(2), a statutory mandatory minimum 120 month (10 year) term of imprisonment applies because when the defendant committed the violation described in Court Two, he had prior convictions under the laws of the State of Connecticut relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor, to wit: violation of Connecticut General Statutes § 53-21(2) (risk of injury to a minor); and a prior conviction under the laws of the State of Connecticut relating to the production, possession, receipt, mailing, sale, distribution, shipment or transportation of child pornography, to wit: violation of Connecticut General Statutes § 53-21 (2) (possession of child pornography). *Id*. at 7.

In the PSR, the United States Probation Office agreed with the Government's assessment and found a total offense level of 33. PSR ¶ 38. Finding that the defendant was a Criminal History Category I, the guideline imprisonment range calculated in the PSR is 135 months to 168 months. PSR ¶ 85. The PSR also determined that "in light of Mr. Smith's prior convictions," pursuant to 18 U.S.C. § 2252A(b)(2), the minimum term of imprisonment is 10 years and the maximum is 20 years. PSR ¶ 84.

In his Sentencing Memorandum, the defendant does not contest the sentencing enhancements applied in the PSR. PSR ¶¶ 26-30. Instead, the defendant reserved his right to object to the application of the enhancements but claims that any objection would be moot if the Court simply imposed the mandatory-minimum sentence of ten years' imprisonment in this case. Def. Sen. Mem. at 10. The Government believes that the PSR correctly applies increases pursuant to U.S.S.G. § 2G2.2(b)(2) (materials involving prepubescent minor who had not attained the age of 12 years), § 2G2.2(b)(4) (material that portrays sadistic or masochistic conduct or other depictions of violence; or sexual abuse or exploitation of an infant or toddler); § 2G2.2(b)(5) (engaging in a pattern of activity involving the sexual abuse of a minor); § 2G2.2(b)(6) (use of a computer or an interactive computer service); § 2G2.2(b)(7) (possession of more than 600 images).

As calculated in both the plea agreement and PSR, the applicable guideline range is 135-168 months' imprisonment.

## III.   <u>DISCUSSION</u>

### a.  **Legal Standard**

Under 18 U.S.C. § 3553(a), the sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The statute then provides:

The court, in determining the sentence to be imposed, shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed to:
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established [in the Sentencing Guidelines];

(5) any pertinent policy statement [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

### b.  Nature and Circumstances of the Offense, § 3553(a)(1)

Section 3553(a)(2)(A) requires the Court, in determining the particular sentence to be imposed on Smith, consider the "nature and circumstances of the offense."

Here, the defendant amassed a collection of child pornography consisting of terabytes of data and millions of files. More than 107,000 those files included victims who are currently known to law enforcement, hundreds of victims in all (though the identities of thousands of child victims depicted in the images remain unknown). Moreover, the defendant engaged with other users of the Boys Town dark web hidden-service site to discuss how large files could be downloaded or to thank others for sharing their collections.

This was not an instance where a defendant fleetingly viewed or accessed child pornography. Instead, Smith curated a staggeringly large collection of child pornography,

including his own categorization of material that involved infants and violent sexual acts against children. Beyond the sheer volume of child sex abuse material possessed by Smith, through his own categorization processes he knew of the abhorrent nature of the materials (*i.e.*, material that portrayed sadistic or masochistic conduct and other depictions of violence) and categorized as such.

As the Court is aware, the online trafficking of child pornography is a manner by which victims of sexual abuse imagery are revictimized with little recourse. Not only do child sex abuse victims suffer physical abuse at the hands of their abusers, where visual depictions of that abuse was captured and disseminated, revictimization occurs each time the image is shared, sent, or downloaded by another person. The Second Circuit recognized the harm created by online marketplaces that distribute child pornography, and the individuals who traffic those sites:

> The ease with which a person can access and distribute child pornography from his home—often with no more effort than a few clicks on a computer—may make it easier for perpetrators to delude themselves that their conduct is not deviant or harmful. But technological advances that facilitate child pornography crimes no more mitigate the real harm caused by these crimes than do technological advances making it easier to perpetrate fraud, traffic drugs, or even engage in acts of terrorism—all at a distance from victims—mitigate those crimes. If anything, the noted digital revolution may actually aggravate child pornography crimes insofar as an expanding market for child pornography fuels greater demand for perverse sexual depictions of children, making it more difficult for authorities to prevent their sexual exploitation and abuse.

*United States v. Reingold*, 731 F.3d 204, 217 (2d Cir. 2013).

The victim impact statements submitted by the Government reinforce the cycle of harm these victims suffer, knowing that images of inconceivable sexual abuse are sought out by, and shared by, individuals using the internet. Each notification by the Government that images of a victim were possessed in a criminal case constitutes another instance of abuse.

### c.  History and Characteristics, § 3553(a)(1)

Next, Section 3553(a)(1) requires the court, in determining the particular sentence to be imposed, consider "the history and characteristics of the defendant."

Smith committed the instant offense at the age of 64-years-old after two prior incidents where he sexually abused minors and possessed child pornography, including one instance where he produced the child pornography that he possessed. Based upon his prior convictions, Smith is required to register as a lifetime sex offender.

While the instant offense does not involve any hands-on contact of a minor, the defendant's history includes two instances where he imparted physical sexual abuse upon minor victims, including where Smith performed oral sex on an 8-year-old victim. PSR ¶¶ 42-43. Smith minimizes these instances of physical abuse, referring to them merely as an inappropriate relationship or an incident involving supervision [of the minor]. Def. Sen. Mem. at 3-4. In his retelling of the offenses in his psychiatric evaluation, Smith differs at times from police reports. Def. Sen. Mem, Ex. A at 5-7.

Smith also committed the instant offense after years of mental health treatment:

- After his 1990 arrest and prior to his conviction in 1992, Mr. Smith engaged in outpatient therapy with Dr. Schneider. From 1992 until 1997, Mr. Smith participated in treatment at the Sterling Center in Shelton, Connecticut. Mr. Smith also initiated individual therapy with Kitty Bhide, LCSW. Def. Sen. Mem. at 4.

- In March 1998, Mr. Smith was charged with illegal sexual contact of a minor and possession of child pornography. After he was released from prison, Mr. Smith reengaged in treatment at the Sterling Center. Mr. Smith also initiated individual therapy with Andrew Kass, M.A., with whom he remained in treatment until 2009. *Id*.

While it is laudable that Smith participated in mental health treatment after each of his prior criminal convictions, he did not continue with that treatment to address his underlying mental health concerns.

Part of the defendant's history and characteristics include his possession of child pornography in various forms since 1990. In 1990, he possessed child pornography (created by the defendant) in the form of photographs. PSR ¶ 42. As technology advanced, in 1998, he possessed child pornography in the form of digital computer files and floppy discs. PSR ¶ 43. Here, with computing power and inexpensive computer memory storage, in 2020, he possessed millions of digital images of child pornography and accessed child pornography websites through the dark web. His longstanding history with possessing child pornography track technological advances over the past thirty years in the manner and means by which child pornography is distributed and possessed.

As part of his history and characteristics, the defendant cites his mental and emotional condition, and age and medical conditions to support downward departures or variances.

### i.  Mental Health and Emotional Condition

Smith seeks a downward variance for his mental and emotional condition, pursuant to U.S.S.G. § 5H1.3, but does not present such conditions to an "unusual degree" to distinguish these case from those typically covered by the guidelines. *See* U.S.S.G. § 5H1.3. While the defendant's mental health and emotional conditions should be considered as part of his history and characteristics, they are not so unique to support a downward variance.

Smith describes a childhood where he suffered mental and verbal abuse from a "domineering, manipulative, contriving, demanding" mother. Def. Sen. Mem. at 2. But fortunately, Smith suffered no childhood physical or sexual abuse. But with respect to childhood

abuse, downward departures are reserved for extraordinary circumstances that caused mental and emotional conditions that contributed to the commission of the offense. *United States v. Rivera*, 192 F.3d 81, 85 (2d Cir. 1999).

Between childhood and commission of the instant offense, Smith also received mental health treatment. Def. Sen. Mem. at 4. When sentenced in the Superior Court of the State of Connecticut before Judge Iannotti in 1999 Smith requested a lesser incarceratory sentence so that he could receive mental health treatment:

> I have done something wrong. Yes, I need treatment. I don't deny that. But I'd ask you to consider some thing as an alternative such as house arrest, alternative from incarceration so that I can continue to be a productive member of society, so I continue to get my medical treatment, my psychiatric treatment.

Sentencing Transcript, August 13, 1999[2]. But for whatever reason, after 2009, Smith chose not to further pursue mental health treatment until he was arrested on this matter.

While the Government recognizes the mental health assessment and diagnosis of Dr. Bardley, the defendant's condition and childhood history are not so unusual and extraordinary to warrant a downward variance pursuant to U.S.S.G. § 5H1.3.

### ii.  Age and Physical Condition

Smith further seeks a downward variance for his age and physical condition, pursuant to U.S.S.G. §§ 5H1.1 & 5H1.4. Again, the defendant's condition, being 67-years-old with certain medical ailments, are not of such an unusual degree to distinguish the case from those covered by the guidelines. *See* U.S.S.G. § 5H1.1, § 5H1.4.

According to the 2022 Annual Report and Sourcebook of Federal Sentencing Statistics, 10.1% of federal offenders convicted of child pornography offenses (production, receipt,

---

[2] Previously provided to the defendant as USAO-0099.

distribution and possession of child pornography) are over the age of 60 years old. *See* 2022 Annual Report and Sourcebook of Federal Sentencing Statistics, at 50 (Table 7) (accessed at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2022/2022-Annual-Report-and-Sourcebook.pdf). Mr. Smith is not so unusual that his age warrants a downward departure.

Nor has the defendant advanced any claim that the Bureau of Prisons cannot treat his medical ailments. *See* Def. Sen. Mem. at 14-15. The defendant advances that his ailments, coupled with his age, require a downward variance under U.S.S.G. § 5H1.4. But the defendant makes no claim that these ailments cannot be adequately treated by the Bureau of Prisons. *See e.g., United States v. Smith,* 564 Fed. App'x 200, 201-02 (6th Cir. 2014) (Affirming denial of a departure based on medical where the court acknowledged numerous physical ailments but found condition could be adequately addressed by Bureau of Prisons). While the defendant is a 67-year-old man with certain medical ailments facing a mandatory minimum sentence of 10 years' imprisonment, his age and ailments do not warrant a downward variance under U.S.S.G. §§ 5H1.1 & 5H1.4.

### d. Seriousness of Offense, Respect for Law, Just Punishment, § 3553(a)(2)(A)

Furthering the distribution of child sex abuse material is a serious offense. Before the advent of the internet, the Supreme Court, in *New York v. Ferber*, recognized the harm caused by the distribution of child pornography:

> [P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography.

*New York v. Ferber*, 458 U.S. 747, 758 n.9 (1982). The mass distribution system described in 1982 pales in comparison to today, where child pornography can be accessed and distributed using the internet.

Here, Smith amassed one of the largest child pornography collections ever seen in this District. For context, Smith had more storage capacity than the Connecticut HSI office investigating his crimes. Hundreds of known victims, and thousands of unknown victims, are depicted in millions of images. Unlike his prior crimes, Smith's offense did not involve any physical contact. But Smith meticulously downloaded child pornography. Critically, he used the Tor browser to access the dark web Boys Town website, but the Tor browser also is a tool used to obfuscate the identity and location (internet protocol address) of the user. Where Smith accessed child pornography websites, through his use of Tor he also attempted to cover his tracks.

But while Smith's crimes took place in the second-floor office of his Southington home, his involvement in possessing millions of images of child sex abuse material had global reach, including where known victims become notified of this case, they also become aware that Smith possessed images of their sexual abuse here in Connecticut. Each victim notification represents an instance where Smith was an abuser, perpetuating cycles of child sexual abuse and contributing to digital propagation of images of near indescribable cruelty to vulnerable children.

According to the statute, because Smith possessed child pornography with prior conviction(s) relating to sexual abuse and possession of child pornography, he is subject to a mandatory minimum sentence of 10 years' imprisonment. 18 U.S.C. § 2252A(b)(2). Just punishment for the defendant's specific offense is not a mere application of the mandatory minimum without fulsome consideration of the offense, enhancements under the sentencing guidelines, and § 3553(a) factors. Here, the guidelines recommend more than the statutory minimum based upon the defendant's history of sexual abuse and possession of child pornography, and because he possessed millions of child sex

abuse images, including sadistic and masochistic conduct, depictions of violence, and sexual abuse of infants.

Each of the victim impact statements, many echoing the words of the Supreme Court in *Ferber*, undoubtably speak to the seriousness of Smith's offense and the need for just punishment.

### e.   Respect for the Law and Deterrence, § 3553(a)(2)(B)

Specific deterrence, incarceration coupled with lifelong mental health treatment, is required to prevent Smith from ever again possessing child sex abuse material. Smith was twice convicted in matters where he possessed child pornography and sentenced to incarceratory terms – 21 months to serve, and 3 years to serve – which did not deter him from later possessing child sex abuse material. Instead, Smith tracked technological advances and became more advanced and prolific in his acquisition of child pornography – using the Tor browser and dark web to obtain millions of files of child pornography.

General deterrence is also an important factor with respect to child pornography offenses. The public should be aware that possession of child pornography, including instances where dark web hidden-service sites are accessed to download and amass a vast collection of child pornography, will result in a substantial term of imprisonment. *See United States v. Schrank*, 975 F.3d 534, 536 (6th Cir. 2020) ("Child pornography is an abhorrent offense that scars the children affected forever. And it doesn't take an economist to know that demand drives. By repeatedly downloading images of young children being raped, [the defendant] contributed to their past victimization.…general deterrence is crucial in the child pornography context.") (citations and internal quotes omitted).

### f.   Protect from Further Crimes, § 3553(a)(2)(C)

The defendant is now 67-years-old. The defendant claims that he has a "uniquely low risk of recidivism." Def. Sen. Mem. at 15. But the defendant's history has shown his pattern of recidivism

with respect to child pornography, even where there were periods where the defendant received mental health treatment.

To be sure, the Court is asked, in effect, to predict the likelihood of Smith's future redividism – whether he will seek child pornography in the future. Past performance, interrupted by two arrests and criminal convictions, indicates that he will do so and will follow technological advances.

The defendant cites the finding in the Federal Sentencing of Child Pornography Non-Production Offenses, a 2021 report by the Sentencing Commission, that only 4.3% of non-production child pornography offenders were later sexual recidivists. Federal Sentencing of Child Pornography Non-Production Offenses, at 65. (Accessed at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf). Those studied shared several characteristics associated with lower recidivism rates, lengthy sentences, their age at sentencing and release, and minimal criminal history. *Id*.

But here, Smith is already a twice known recidivist with a criminal history. Even Smith's Child Pornography Offender Risk Tool (CPORT) score of four supports a real recidivism risk. Def. Sen. Mem., Ex. A at 12-13. Where the defendant cites the 4.3% recidivism estimate for those studied in the 2021 Sentencing Commission Report, he glosses over his specific CPORT results. In findings specific to the defendant, Dr. Bradley concluded:

- The observed five-year sexual recidivism (child pornography plus contact offenses) rate among persons in the normative sample who obtained a four-point score was 23.5%.

- The observed five-year recidivism rate for possession of child pornography among persons in the normative sample who obtained a four-point score was 17.6%.

Based on the Smith's recidivist history and the potential for future recidivism, there is reason to protect the public from further crimes committed by Smith.

### f.   Provide Care to Defendant, § 3553(a)(2)(D)

The Government agrees that any sentence should provide the defendant with needed mental health treatment. The timing of the defendant's mental health treatment prior to his arrest in this case appears to have been caused by his two prior convictions, but later abandoned.

The Government is encouraged that Smith is currently engaged in mental health treatment, and hopes that he continues lifelong mental health treatment.

### g.   Avoid Unwarranted Sentence Disparities, § 3553(6)

The defendant's case provides facts and circumstances unique to him, including that he has been twice convicted for violations of law involving child sex abuse and the possession of child pornography. In this case, the defendant possessed millions of images depicting child sex abuse material, numbers beyond that of any defendant known in this District.

In *United States v. Mosely*, 3:21CR162 (KAD), the defendant was sentenced to 121 months' imprisonment for violation of 18 U.S.C. §§ 2252(a)(5)(B) and (b)(2) (possession of child pornography). In *Mosely*, the guideline range was 120-151 months' imprisonment where the defendant had a prior state conviction for possession of child pornography and possessed a cloud storage account that contained thousands of images of child pornography, including images of infants (but not sadistic and masochistic conduct).

In *United States v. Holm*, 3:21CR153 (KAD), the defendant was sentenced to 156 months' imprisonment for violation of 18 U.S.C. §§ 2252(a)(5)(B) and (b)(2) (possession of child pornography). In *Holm*, the guideline range was 168-210 months' imprisonment where the defendant had a prior state conviction for possession of child pornography and possessed approximately 260 files, including those depicting infants and sadistic and masochistic conduct.

In *United States v. Gschlecht*, 3:19CR254 (KAD), the defendant was sentenced to 120 months' imprisonment for violation of 18 U.S.C. §§ 2252(a)(5)(B) and (b)(2) (possession of child

pornography). In *Gschlecht*, the guideline range was 110-137 months' imprisonment where the defendant had prior state convictions for sex abuse and possession of child pornography and possessed approximately 174 images of child pornography, including those depicting infants and sadistic and masochistic conduct.

Here, *Smith* possessed a quantity of child pornography vastly greater than any of the above-described cases. While a Criminal History Category I, Smith has two prior convictions where he possessed child pornography. His relevant conduct includes receipt of child pornography and his dark web access to the Boys Town child pornography website, including comments on that website discussing downloading child pornography. Smith's conduct outweighs that in other cases where defendants received the mandatory minimum sentence, and that in *Holm* where the defendant received a sentence of 156 months' imprisonment. A sentence at the top of Smith's guideline range would not result in an unwarranted sentencing disparity.

### h.  Provide Victim Restitution, § 3553(7)

To date, the Government has provided the defendant with restitution requests from twelve victims. As noted in the Government's pending Motion to Continue Sentence, Doc. No. 84, the Government is still in the process of notifying victims that became known to the Government after a subsequent Child Identification Report, dated July 12, 2023, was provided to the Government by the National Center for Missing and Exploited Children. The Government has encouraged the defendant to seek to negotiate a resolution of amount to be paid to victims who request restitution.

The Government requests the Court to postpone any restitution determination for no more than 90 days after sentencing, pursuant to 18 U.S.C. § 3664(d)(5).

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Government submits that a mandatory-minimum sentence of 120 months' imprisonment would not be appropriate based upon the scope of the defendant's conduct – including his possession of over 4 million child sex abuse images. The Government believes that a sentence of 168 months' imprisonment, at the greater end of his guideline range – 135 to 168 months' imprisonment – would be a sentence sufficient but not greater than necessary when weighing the § 3553(a) factors.

For the reasons described in the Government's Motion to Continue Sentencing, Doc. Nos. 84, 87, the Government respectfully requests the ability to supplement this memorandum with additional victim-related information.

Respectfully submitted,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

___/s/_____
PATRICK J. DOHERTY
ASSISTANT U.S. ATTORNEY
Federal Bar No. PHV10400
1000 Lafayette Blvd., 10th Fl.
Bridgeport, Connecticut 06604

### CERTIFICATE OF SERVICE

        This is to certify that on July 20, 2023, a copy of the foregoing Government's
Memorandum was filed electronically and served by first-class United States mail on anyone
unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by
operation of the Court's electronic filing system or by mail to anyone unable to accept electronic
filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the
Court's CM/ECF System.


                                        __/s/_____
                                        PATRICK J. DOHERTY
                                        ASSISTANT U.S. ATTORNEY