IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 3:21CR47 (JAM) |
| v. | October 10, 2023 |
| RICHARD SMITH | |

### GOVERNMENT'S MOTION FOR AN ORDER OF RESTITUTION

The United States respectfully requests that the Court enter an order requiring the defendant, Richard Smith, to pay restitution to minor victims depicted in series of child pornography (and identified by pseudonyms): "Does 1-5" (8kids Series), "Angela" (Angela Series), "April" (AprilBlonde Series), "Alice" (At_Dawn Series), "Maria" (Best Necklace Series), "Honor" (Block PJs Series), "Henley" (BluePillow Series), "Jackson" and "Jordan" (BluePlaid4 Series), "Fiona" (BluesPink Series), "Jane" (CinderBlockBlue Series), "Cindy" (Cindy Series), "Carrie" (FaceBaby Series), "Donatello" (Feb212 Series), "Wyatt" (HarleyDude 1 Series), "Matthew" (Honeycomb Series), "Sally" (Jan_Socks4 Series), "Soloman" (JBlonde Series), "Ivy" and "Jen" (JBN Flowers Series), "Jenny" (Jenny Series), "Dipper" (Jester Series), "Maureen" (Lighthouse 1 Series), "Casseaopeia" (Lighthouse 3 Series), "Susie" (Lighthouse 4 Series), "Patty" (Linda&Patty Series), "Sarah" (Marineland 1 Series), "Anna" (Middle Model Sister Series), "Amy" (Misty Series), "Moca" (Moca Series), "Cara" (Motorcouch 1 Series), "PD11" (PD11 Series), "Erika" and "Tori" (PinkHeartSisters Series), "Jessy" (SurferHair Series), and "Ali" (ZooFamily 1 Series).

In all, 40 victims have made requests for restitution. Of the 40 victim requests, 25 have agreed through counsel to a restitution amount of $3,000. Those who have agreed are: "Does 1-5" (8kids Series), "Angela" (Angela Series), "April" (AprilBlonde Series), "Jackson" and "Jordan" (BluePlaid4 Series), "Fiona" (BluesPink Series), "Jane" (CinderBlockBlue Series), "Carrie" (FaceBaby Series), "Wyatt" (HarleyDude 1 Series), "Matthew" (Honeycomb Series), "Ivy" and "Jen" (JBN Flowers Series), "Jenny" (Jenny Series), "Casseaopeia" (Lighthouse 3 Series), "Susie" (Lighthouse 4 Series),

"Anna" (Middle Model Sister Series), "Amy" (Misty Series), "PD11" (PD11 Series), "Erika" and "Tori" (PinkHeartSisters Series), "Ali" (ZooFamily 1 Series).

As for the remaining 15 victims, the Government received restitution requests from counsel for the victims in varying amounts. The Government requested that victim counsel speak with defense counsel for Mr. Smith in efforts to resolve restitution matters. There has been no response from two attorneys (representing seven victims), while counsel for the other eight victims (consisting of two law firms) represented that they would speak with Mr. Smith's counsel but have not yet come to an agreeable resolution.

The restitution requests made by the remaining 15 victims are as follows:

- "Alice" (At_Dawn Series) requests $25,000;

- "Maria" (Best Necklace Series) requests $7,500;

- "Honor" (Block PJs Series) requests $5,000;

- "Henley" (BluePillow Series) requests $5,000;

- "Cindy" (Cindy Series) requests $8,000;

- "Donatello" (Feb212 Series) requests $5,000;

- "Sally" (Jan_Socks4 Series) requests $7,500;

- "Soloman" (JBlonde Series) requests $10,000;

- "Dipper" (Jester Series) requests $5,000;

- "Maureen" (Lighthouse 1 Series) requests $10,000;

- "Patty" (Linda&Patty Series) requests $10,000;

- "Sarah" (Marineland1 Series) requests $10,000;

- "Moca" (Moca Series) requests $4,000;

- "Cara" (Motorcouch 1 Series) requests $7,500;

- "Jessy" (SurferHair Series) requests $5,000.

A.     **Applicable Law**

Under 18 U.S.C. § 2259, a district court is required to award restitution to victims of child pornography trafficking, including the receipt, distribution, and possession of child pornography. By statute, restitution is "mandatory" and must be imposed regardless of a defendant's economic circumstances or financial ability to pay. 18 U.S.C. § 2259(b)(4).  District courts must order a defendant to pay restitution for "the full amount of the victim's losses." 18 U.S.C. § 2259(b)(1). The "full amount of the victim's losses" is statutorily defined to include any costs incurred by the victim for (A) medical services relating to physical, psychiatric, or psychological care; (B) physical and occupational therapy or rehabilitation; (C) necessary transportation, temporary housing, and child care expenses; (D) lost income; (E) reasonable attorneys' fees, as well as other costs incurred; and (F) any other relevant losses incurred by the victim. 18 U.S.C. § 2259(c)(2). In determining the amount of restitution, "the court shall order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000." 18 U.S.C. § 2259(b)(2)(B).

In *Paroline v. United States*, 134 S. Ct. 1710 (2014), the Supreme Court identified seven factors a district court may consider that "bear on the relative causal significance of the defendant's conduct" in relation to the victims' losses: 1) "the number of past criminal defendants found to have contributed to the victim's general losses;" 2) "reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses;" 3) "any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted);" 4) "whether the defendant reproduced or distributed images of the victim;" 5) "whether the defendant had any connection to the initial production of the images;" 6) "how many images of the victim the defendant possessed;"

3

7) "and other facts relevant to the defendant's relative causal role." *Id.* at 1728.

The Supreme Court added that these factors should serve as rough guideposts for determining a restitution amount that fits the offense. *Id.*  However, the Supreme Court repeatedly emphasized that there was no "precise algorithm for determining the proper restitution amount," and that "[t]hese factors need not be converted into a rigid formula, especially if doing so would result in trivial restitution orders."  *Id.* at 1728, 1729.  Accordingly, district courts have to exercise "discretion and sound judgment" in fashioning awards.  *Id.* at 1728.

> [C]ourts can only do their best to apply the statute as written in a workable manner, faithful to the competing principles at stake: that victims should be compensated and that defendants should be held to account for the impact of their conduct on those victims, but also that defendants should be made liable for the consequences and gravity of their own conduct, not the conduct of others.

*Id.* at 1729.

Thus, the factors discussed in *Paroline* (and referenced above) are only suggestions, not requirements. Indeed, it is the Government's position that many of those suggestions are unworkable when applied in actual practice.

### 1. The number of past defendants found to have contributed to the victim's general losses

The Government submits that providing accurate information regarding this factor is not possible. The Government cannot provide a reliable or even approximate number of past criminal defendants who have possessed or distributed any given victim's image, much less narrow that number to those actually convicted of possessing or distributing the particular victim's depiction, and then further narrow the list to those found by a court of law to have directly contributed to the victim's general losses.

First, the United States Attorney's Office only has access to federal data, and has no information about state or local prosecutions, which are growing in number.  As for the limited

federal data to which the United States has access, that data consists of information stored in the federal case management system and the federal Victim Notification System ("VNS"). Unfortunately, neither database tracks victim restitution awards nationwide.  Additionally, prosecutors charge and plead cases in a variety of ways, which may not capture which defendants actually possessed or distributed a particular victim's image.  In this regard, a victim's image may appear in an investigation but be otherwise unassociated with a defendant, criminal case, or conviction.

While VNS may be able to provide the number of times a victim has been identified in a federal investigation, that number is neither comprehensive nor reliable.  Further, even if a list of matters involving a particular victim is generated from VNS, it is not possible to ascertain where each case stands in the criminal justice process without reviewing each individual record. A defendant whose case is merely under investigation; or whose charges have been declined, dismissed or adjudicated not guilty; or who has had the counts dismissed involving the victim's image, should not be counted as contributing to the victim's harm.

The National Center for Missing and Exploited Children ("NCMEC") tracks each instance in which a victim's depiction is found in an investigation, but only for those investigations in which images are submitted to them. When asked, NCMEC analysts attempt to identify the children seen in material recovered in child pornography investigations. However, investigators are *not required* to submit their evidence to NCMEC and may sometimes submit some but not all of the evidence recovered in an investigation. Given that computers and electronic devices capable of storing terabytes of data have become commonplace and affordable, and given many child pornographers' penchant for collecting thousands (or here, millions) of depictions of children being sexually abused, in some cases law enforcement is unable devote the time and resources necessary to

recover and provide to NCMEC *each and every* depiction of a child possessed by an offender.

Further, NCMEC's data will not afford a reliable estimate of how many defendants can be said to have contributed to the victim's losses because these reports only indicate how many times NCMEC has identified an investigation involving the victim's images. The reports do not provide any more specific information regarding the status of the investigation or case; they do not indicate whether the subject of the investigation was charged, whether any charges that were brought encompass a particular victim's depictions, whether the evidence survived any subsequent suppression motions filed, or whether the defendant was convicted and of what charges, much less whether a court made a determination as to the defendant's contribution to the particular victim's general losses.

For these reasons, the Government cannot provide the Court with the total number of past defendants found to have contributed to each victims' general losses.

However, other courts have interpreted this factor to mean "the number of defendants who have been ordered to pay restitution to a particular victim." *See United States v. Bellah*, No. 13–10169, 2014 WL 7073287, *3 (D. Kan. Dec. 12, 2014); *United States v. DiLeo*, 58 F.Supp.3d 239, 245 (E.D.N.Y. 2014); *United States v. McIntosh*, No. 4:14cr28, 2014 WL 5422215, *6 (E.D. Va. Oct. 22, 2014); *United States v. Reynolds*, No. 12–20843, 2014 WL 4187936, *6 (E.D. Mich. Aug. 22, 2014); *United States v. Crisostomi*, 31 F.Supp.3d 361, 365 (D. R.I. 2014).  In this regard, the Child Exploitation and Obscenity Section ("CEOS") of the U.S. Department of Justice's Criminal Division does attempt to keep track of past *federal* defendants who have been ordered to pay restitution to specific victims. That information is recorded and periodically updated by CEOS employees. It should be noted, however, that the information in CEOS's chart is self-reported by individual Assistant United States Attorneys and is therefore subject to human error and omissions.

It also does not account for state or local prosecutions.

For the 15 victims seeking restitution in this case who have not come to an agreed upon resolution with defense counsel, the Government has attached CEOS's listings of federal restitution orders.  *See* Ex. A.  These lists may provide some guidance to the Court in fashioning a restitution amount.  Indeed, the courts cited above have used the CEOS data in analyzing this factor.

Several courts have also used this data as a starting point for calculating restitution by taking the total losses of a particular victim, and dividing it by the total number of defendants ordered to pay restitution thus far, plus one for the defendant at issue,.  *DiLeo*, 58 F.Supp.3d at 245; *United States v. Wencewicz*, 63 F.Supp.3d 1238, 1245-46 (D. Mont. Oct. 24, 2014); *United States v. Watkins*, No. 2:13–cr–00268, 2014 WL 3966381, *7 (E.D. Cal Aug. 13, 2014); *United States v. Hernandez*, No. 11-cr-26 2014 WL 2987665, *10 (E.D. Cal. July 1, 2014).

The Government does not recommend this approach of using the total number of restitution orders to date as a divisor for the victim's general losses in order to calculate restitution as it would inevitably lead to ever-diminishing "trivial" or "nominal" restitution awards, which are prohibited under *Paroline*.  As time goes on, the number of awards made to each victim will inevitably increase. Thus, if the number of defendants ordered to pay restitution were to be used as a divisor in calculating the amount of restitution each successive defendant owes, those sentenced or required to pay restitution later in time will be held responsible for an increasingly smaller portion of the victim's harm. That would financially reward defendants who are able to evade law enforcement for longer periods of time before being caught or who prolong their adjudication and/or their restitution-related litigation.  Other district courts also have declined to adopt this approach. *See Bellah*, 2014 WL 7073287, at *4 (stating that the court "is not persuaded that this

formula adequately results in fair restitution awards in general"); *see also United States v. Baslan*, No. 13-cr-220, 2015 WL 1258158, *5 n.8 (E.D.N.Y. Mar. 17, 2015); *United States v. Miner*, No. 1:14-cr-33, 2014 WL 4816230, *9 (N.D.N.Y. Sep. 25, 2014), *aff'd in part*, 617 F. App'x 102, 103 (2d Cir. Sep. 21, 2015) (summary order)

For these reasons, the Government urges the Court to consider the number of past defendants found to have contributed to each victim's general losses as merely an indicator of how wide-spread each child pornography series has become and not as a divisor for apportioning the contribution of each. The more wide-spread each series becomes, the greater the harm one can infer that has been and will be suffered by the victim as a result of the circulation of her depictions. The particular number of defendants found responsible for contributing to a victim's harm in the past should not be solely used to dictate the amount of restitution owed since (as explained above) using that number as a divisor does not represent an equitable or expeditious method of making the victim financially whole.

## 2. Reasonable predictions of the number of future defendants and reasonably reliable estimates of the broader number of offenders involved

The Government submits that due to the difficulty in predicting technological, market and investigative advances, it is impossible to know or estimate with any degree of certainty the second and third *Paroline* factors, that is "the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses" or "the broader number of offenders involved (most of whom will, of course, never be caught or convicted)."  Other courts have agreed that these two *Paroline* factors are unworkable in practice. *See Bellah*, 2014 WL 7073287, at *3 ("finding such a reasonable prediction is an unworkable standard"); *DiLeo*, 58 F.Supp.3d at 245 ("it is hard to fathom how, at any given point in time, such estimates and predictions could be more than a wild guess"); *Wencewicz*, 63 F.Supp.3d at 1246 (recognizing that "there is no information

on which to reasonably predict future offenders"); *McIntosh*, 2014 WL 5422215, at *6 (declining to apply these two factors because of the difficulty in predicting the numbers); *Miner*, 2014 WL 4816230, at *9 (finding "that such concerns are well-founded"); *Reynolds*, 2014 WL 4187936, at *6 (declining to apply the factor and stating "[f]rankly, these two suggested factors strike this Court as incredibly speculative—this Court questions how you could ever have reasonable or reliable estimates of the above"); *Crisostomi*, 31 F.Supp.3d at 364 (observing that a number of the *Paroline* factors "are virtually unknown and unknowable" and questioning "how is a district judge to make a 'reliable estimate of the broader number of offenses involved' when even the U.S. Supreme Court admits parenthetically that "most of whom will, of course, never be caught, or convicted?'"); *Watkins*, 2014 WL 3966381, at *7 (declining to consider these factors because there was no evidence to support a reasonable prediction of the number of future offenders); *United States v. Campbell-Zorn*, No. 14-cr-41, 2014 WL 7215214, *6 (D. Mont. Dec. 17, 2014) ("Pure speculation is the only way to know the number of past criminal defendants found to have contributed to [victim's] general losses, and there is no way to predict the number of future offenders likely to be caught and convicted for crimes contributing to her general losses or to estimate the broader number of offenders involved" (internal quotations omitted)).[1]

By all present indications, it is unlikely that the future number of defendants will ever decrease, and there will most certainly be more defendants in the future who contribute to these victims' general losses.  However, the Government is not in a position to provide the Court with any predictions of what that number will be with any reliability or degree of certainty.

---

[1] District courts have expressed frustration with using the *Paroline* factors in general to determine restitution. *See, e.g., DiLeo*, 58 F.Supp.3d at 245 (characterizing the application of the *Paroline* factors as "akin to piloting a small craft to safe harbor in a Nor'Easter"); *Campbell-Zorn*, 2014 WL 7215214, at *3 ("These tools provided by *Paroline*, while seemingly useful in a theoretical sense, have proven to have very difficult, and very limited, practical application")

### 3.      Whether the defendant distributed the images

When a defendant distributes images of a victim in such a manner that those images entered or continued to move through the wider stream of commerce (e.g., shared them on a child pornography bulletin board, emailed them to other offenders, or made them available on a peer-2-peer file sharing network), this factor should weigh in favor of a higher restitution award because it reflects a greater role in the overall causal process.  In this regard, the *Paroline* Court identified a meaningful way to distinguish between possessors and distributors.  However, the Supreme Court did not provide any further guidance for crafting a restitution amount that is neither "trivial" nor "nominal."

### 4.      Whether the defendant contributed to the original production

Like distribution, participation in the original production would evidence a much greater contribution to a victim's overall losses, justifying a significantly higher restitution award. In this case, there is no evidence that the defendant was a participant in the original production of any of the requesting victims' images.  Again, this does not mean that the victims are not due restitution. It simply means that this factor does not escalate the restitution to a higher level of restitution.

### 5.      How many images the defendant possessed

The number of images of the victim seeking restitution possessed by the defendant could make the defendant more or less culpable for a victim's losses than other possessors or distributors. In the abstract, the notion that fewer images adds less harm to a victim is appealing; however, even the possession of one image by a defendant is sufficient to trigger the harm experienced by the victim.

Arguably, the number of images could be meaningful if that number was used to compare against other defendants engaged in similar behavior relating to a particular victim.  However,

because the number of images of a particular victim relative to a particular defendant is not tracked, comparing the number of images or videos among defendants is not available.

Still, the Government submits that the number of images or videos of a particular victim does demonstrate the defendant's interest in exploiting a particular victim. In this regard, the number of images demonstrates that a defendant sought out and exploited a victim to a greater or lesser degree. The Government submits that the more a defendant involves himself with a particular victim, the more he contributes to that victim's losses. That level of involvement may be discerned by the number of images or videos that were possessed. *See Bellah*, 2014 WL 7073287, *4 ("The Court is persuaded that the more images are possessed by a defendant, the more damages are accountable to that defendant").

### 6.      Others facts relevant to the defendant's relative causal role

The *Paroline* decision kept the door open for the Court to consider additional facts specific to a defendant's conduct. In its review of the defendant's conduct in this case, the Government does not find any additional facts (such as making or receiving payment for a victims' image) which might otherwise escalate the defendant's relative causal role. This does not mean the defendant should not pay restitution. It simply means he has not contributed as greatly as some other offenders.

### 7.      Restitution sought and ordered in other cases

The *Paroline* decision noted that a court may consider whether restitution has been sought, and ordered, in other cases. *Paroline*, 134 S. Ct. at 1729. The size of other awards the victim has received in prior cases is, at some level, an indication of a "reasonable" amount. For a victim who has already received a substantial number of restitution awards, looking at those prior awards to find a benchmark amount might be one of the most useful factors. *See, e.g., Bellah*, 2014 WL

7073287, at *4 ("[t]he Court is persuaded that the average of other awards is a rational guide to help determine a proper restitution amount"); *Miner*, 617 F. App'x at 103.

For the victims involved in this case, the Government has attached a listing of prior restitution orders known to DOJ CEOS. *See* Ex. A.  As discussed above, the list is the product of self-reports by Assistant United States Attorneys and may fail to include every case where restitution was ordered.  Nonetheless, the list may provide some guidance to the Court, although the Government would note the listing does not track whether each order was the product of an agreed upon settlement between the defendant and the victim (wherein victims often agree to accept a lesser amount if it will be promptly paid) or the product of protracted litigation.  Also, no case-specific facts are provided in the chart so there is no way to compare any individual award, or even the aggregate of awards, to that which is sought in a particular case based upon the facts presented.

**B.    Restitution Requests**

The defendant's offense proximately caused losses to each victim because the defendant possessed child pornography depicting the victims, and the victims are suffering harm from the continuous and ongoing trafficking of his images. *See, e.g., Paroline*, 134 S. Ct. at 1727 (finding that restitution should be ordered "where it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images").

**1.   "Alice" (At_Dawn Series)**

The defendant possessed at least two images depicting "Alice." "Alice" requests $25,000 in restitution. Counsel for "Alice" submits that: "The full amount of her general losses documented to date include the costs of psychological counseling in today's dollars of between $209,925.00 and $304,275.001, the costs of additional schooling of $13,600.00, and future lost wages and benefits between $3,641,625.00 and $4,692,411.00. The expense of putting together

documentation of her losses totals $42,541.74 at this time. The total of her losses documented at this time is thus between $3,907,691.74 and $5,052,827.74."

Counsel for "Alice" states that there have been 45 prior orders of restitution and that: "Our request is for an apportioned amount of restitution of $25,000 for general losses consistent with *Paroline v. United States* . . . and the Government's often-used "divisor" formula. Taking the lower amount of general losses of $3,907,691.74 divided by the number of past orders + one (45), the result is $86,837.59. The requested restitution is thus less than 1 percent of the low end of the range of total losses."

### 2. "Maria" (Best Necklace Series)

The defendant possessed at least 10 images depicting "Maria." "Maria" requests $7,500 in restitution. Counsel for "Maria" submits that: "The full amount of Maria's economic losses is as follows: $112,100.00 to $137,100.00 in future counseling expenses, future costs for educational and vocational assessment, and $11,972.05 in expenses paid in out of pocket costs incurred relative to restitution documentation. These total $124,072.05 to $149,072.05 and do not include attorney's fees allowable by statute. We anticipate additional costs for a vocational assessment. These are not claimed at this time." Counsel for "Maria" states that: "There are currently 98 orders of restitution entered for Maria. She has received $19,257 in restitution payments so far."

### 3. "Honor" (Block PJs Series)

The defendant possessed at least three images depicting "Honor". "Honor" requests $5,000 in restitution. Counsel for "Honor" submits that: "We have just initiated our work on behalf of Honor and are in the process of gathering records of his treatment, the original criminal prosecution, and other background information preparatory to obtaining a psychological evaluation and treatment plan for him which will be a basis for restitution to be requested. We anticipate that the cost for the records and the psychological evaluation will be approximately $25,000. In our experience representing a number

of victims of child pornography there has not been a single treatment plan that has projected a cost of therapy less than $100,000." DOJ CEOS has record of at least seven restitution orders resulting from the Block PJs Series.

### 4.  "Henley" (BluePillow Series)

The defendant possessed at least 63 images depicting "Henley." "Henley" requests $5,000 in restitution. Counsel for "Henley" submits that: "Anticipated expenses for this matter include but are not limited to the costs of medical and school records (estimated at $1,000), the cost of psychological evaluation (estimated at $20,000), travel to meet with the client (estimated at $1,000), and costs for access to court records via PACER. It is anticipated that we will have additional expenditures for a vocational assessment, as well, and we estimate that that will be an additional $8,000-10,000. We expect total costs simply to document Henley's injuries and need for restitution to exceed $30,000 and hat includes NO attorney's fees." DOJ CEOS has record of at least 336 restitution orders resulting from the BluePillow Series.

### 5.  "Cindy" (Cindy Series)

The defendant possessed at least 13 images depicting "Cindy." "Cindy" requests $8,000 in restitution. Counsel for "Cindy" submits that: "The full amount of "Cindy's" current documented economic losses total $1,668,232.47, itemized [in counsel's submission]. Obviously this does not include any amounts for necessary ongoing and future counseling and educational expenses, which, in and of themselves, would be substantial." DOJ CEOS has record of at least 855 restitution orders resulting from the Cindy Series.

### 6.  "Donatello" (Feb212 Series)

The defendant possessed at least 10 images depicting "Donatello." "Donatello" requests $5,000 in restitution. Counsel for "Donatello" submits that: "Donatello's lossesses documented and projected to date are approximately $20,000 (excluding attorneys fees and costs of documentation)."  DOJ CEOS has record of at least 33 restitution orders resulting from the Donatello Series.

**7. "Sally" (Jan_Socks4 Series)**

The defendant possessed at least 31 images depicting "Sally." "Sally" requests $7,500 in restitution. Counsel for "Sally" submits the projected cost of her medical care is $247,689, counseling costs over her life will range from $59,850 to $79,800, and out of pocket costs are $29,809, totaling up to $357,478 for total losses. To date, according to counsel, "Sally" has noticed 173 restitution orders, receiving some payment from 88 defendants.

**8. "Soloman" (JBlonde Series)**

The defendant possessed at least 1,020 images depicting "Soloman." "Soloman" requests $9,000 in restitution. Counsel for "Soloman" submits that: "The currently documented amount of Solomon's losses is up to $359,200.00 in needed psychotherapy assessment and treatment, and $22,227.11 in expenses resulting from documentation of losses, for a total of $381,427.11." Counsel further estimates diminished future earning capacity at $1,111,220. According to counsel, "Soloman" has received 268 orders of restitution, recovering $204,263.45.

**9. "Dipper" (Jester Series)**

The defendant possessed at least 18 images depicting "Dipper." "Dipper" requests $5,000 in restitution. Counsel for "Dipper" submits that they have just initiated work on behalf of "Dipper" but are "[P]rojecting the costs of future psychological care for him to be between $40,000 and 60,000. We anticipate that the cost for the records and the psychological evaluation will be approximately $25,000." DOJ CEOS has record of at least 21 restitution orders resulting from the Jester Series.

**10. "Maureen" (Lighthouse 1 Series)**

The defendant possessed at least 10 images depicting "Maureen." "Maureen" requests $10,000 in restitution. Counsel for "Maureen" submits that: "Maureen's total losses proximately caused by the ongoing circulation of her images, including medical and psychological treatment ($180,000), transportation ($20,000), medication ($10,000), educational ($250), childcare ($3,000), wage loss

($800,000-1,400,000) and costs and attorney's fees ($20,000) to be in excess of $1,233,250." DOJ CEOS has record of at least 416 restitution orders resulting from the Lighthouse 1 Series.

### 11. "Patty" (Linda&Patty Series)

The defendant possessed at least 80 images depicting "Patty." "Patty" requests $10,000 in restitution. As the Court recalls, "Patty" spoke at the sentencing of Mr. Smith. Counsel for "Patty" submits that "Patty" pays out-of-pocket for therapy sessions and seeks restitution to cover the partial cost of intermittent weekly psychotherapy services. DOJ CEOS has record of at least 134 restitution orders resulting from the Linda&Patty Series.

### 12. "Sarah" (Marineland1 Seres)

The defendant possessed at least 94 images depicting "Sarah." "Sarah" requests $10,000 in restitution. Counsel for "Sarah" submits that: "The full amount of her general losses documented to date include the costs of psychological counseling of $448,552.00, lost income of $2,273,436.00, and out of pocket costs and expenses of $36,347.28 incurred relative to restitution documentation. The total losses to date are $2,758,335.28. Sarah is still requesting restitution as she has not yet received payment for all her losses. We have notice of 1,282 orders of restitution being entered to date for Sarah.  Our request is for an apportioned amount of restitution of $10,000.00 for general losses consistent with *Paroline v. United States*, 572 US 464, 134 S. Ct. 1710 (2014). This request is less than 1% of Sarah's total losses, and is a rational apportionment based upon the harm caused by the crime, the amount of her losses, and the number of prior orders." At least 1,282 orders for restation have been entered for "Sarah," with counsel stating that she has "received payment for less than half of her losses."

### 13. "Moca" (Moca Series)

The defendant possessed at least seven images depicting "Moca." "Moca" requests $4,000 in restitution. Counsel for "Moca" submits that: "My client seeks restitution for the losses that she incurred as a victim of child pornography. These losses include, but are not limited to, costs relating to

medical services including the cost of medication to treat the residual effects of her abuse, costs relating to psychological therapy, costs relating to projected future lost wages, and costs relating to security measures taken by my client's parents to prevent further harm to their child." DOJ CEOS has record of at least three restitution orders resulting from the Moca Series.

### 14. "Cara" (Motorcouch 1 Series)

The defendant possessed at least 25 images depicting "Cara." "Cara" requests $7,500 in restitution. Counsel for "Cara" submits that: "Cara has documented losses at this time of $43,758.82 to $57,758.82," and that "Cara has received 130 prior restitution orders of which 15 defendants have actually made some payment."

### 15. "Jessy" (SurferHair Series)

The defendant possessed at least 2,224 images depicting "Jessy." "Jessy" requests $5,000 in restitution. Counsel for "Jessy" submits that: "Jessy's losses documented and projected to date are in excess of $50,000."   DOJ CEOS has record of at least 167 restitution orders resulting from the SurferHair Series.

### B.   *Paroline* Factors

Specific to this defendant, as the Court knows from sentencing. Mr. Smith possessed millions of images depicting child pornography and child sex abuse material. *See* Doc. No. 88 (Government's Sentencing Memorandum). As to the fourth, fifth and sixth *Paroline* factors: there was no indication that Mr. Smith reproduced or distributed images of the victims; there is no connection between Mr. Smith and the initial production of the images; the number of images of each victim are described above, ranging from as few as two to as many as 2,224. As to the seventh *Paroline* factor, defense counsel and Mr. Smith advanced at sentencing other facts about his characteristics. While Mr. Smith accessed dark web hidden service websites to download immense quantities of child pornography, he

described his role as an obsessive-compulsive collector who possessed more images than he would be able to review, millions of images in all.

### C.      Conclusion

The Government respectfully requests that the Court enter orders of restitution in the amount of $3,000, as agreed between 25 victims and the defendant, that is: "Does 1-5" (8kids Series), "Angela" (Angela Series), "April" (AprilBlonde Series), "Jackson" and "Jordan" (BluePlaid4 Series), "Fiona" (BluesPink Series), "Jane" (CinderBlockBlue Series), "Carrie" (FaceBaby Series), "Wyatt" (HarleyDude 1 Series), "Matthew" (Honeycomb Series), "Ivy" and "Jen" (JBN Flowers Series), "Jenny" (Jenny Series), "Casseaopeia" (Lighthouse 3 Series), "Susie" (Lighthouse 4 Series), "Anna" (Middle Model Sister Series), "Amy" (Misty Series), "PD11" (PD11 Series), "Erika" and "Tori" (PinkHeartSisters Series), "Ali" (ZooFamily 1 Series).

The Government further requests that the Court enter orders of restitution for the remaining 15 victims, that is: "Alice" (At_Dawn Series), "Maria" (Best Necklace Series), "Honor" (Block PJs Series), "Henley" (BluePillow Series), "Cindy" (Cindy Series), "Donatello" (Feb212 Series), "Sally" (Jan_Socks4 Series), "Soloman" (JBlonde Series), "Dipper" (Jester Series), "Maureen" (Lighthouse 1 Series), "Patty" (Linda&Patty Series) "Sarah" (Marineland1 Series), "Moca" (Moca Series), "Cara" (Motorcouch 1 Series), "Jessy" (SurferHair Series). The Government requests that, after review of the *Paroline* factors, the number of images from each victim series possessed by Mr. Smith, the submissions made by victim counsel, and the unique circumstances of each victim, that the Court enter orders of restitution of at least $3,000 for each victim.

Respectfully Submitted,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

__/s/_____
PATRICK J. DOHERTY
ASSISTANT U.S. ATTORNEY
Federal Bar No. PHV10400
1000 Lafayette Blvd., 10th Fl.
Bridgeport, Connecticut 06604

## CERTIFICATE OF SERVICE

This is to certify that on October 10, 2023, a copy of the foregoing Government's Motion was filed electronically and served by first-class United States mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

__/s/_____
PATRICK J. DOHERTY
ASSISTANT U.S. ATTORNEY